IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-00281-CMA-KMT

CARTENOUS TURNER,

    Plaintiff,

v.

ANTHONY GARCIA-SERNA,
BRIAN SMITH,
LISA ATTEBERRY, and
DAVID KEIFER,

    Defendants.

---

ORDER ADOPTING RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

---

    This matter is before the Court on the February 11, 2021 Recommendation of United States Magistrate Judge. (Doc. # 70.) Therein, Magistrate Judge Kathleen M. Tafoya recommends that this Court grant in part and deny in part the City Defendants' Motion to Dismiss Second Amended Complaint (Doc. # 30) and deny the County Officers' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 32) in its entirety. Defendants David Kiefer, Anthony Garcia-Serna, Brian Smith, and Lisa Atteberry ("County Defendants") timely objected to some portions of the

Recommendation. (Doc. # 72.) For the following reasons, the County Defendants' objections are overruled, and the Court adopts the Recommendation.[1]

## I. BACKGROUND[2]

Judge Tafoya's Recommendation provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address the County Defendants' Objection to the Recommendation.

The instant case arises from alleged uses of excessive force and failures to intervene that took place during Plaintiff Cartenous Turner's arrest on February 3, 2018. *See generally* (Doc. # 27).

In his Second Amended Complaint ("SAC"), Plaintiff alleges that City of Pueblo Police Department Officers Diaz, Alfonso, and Juliano "seized and handcuffed Plaintiff" outside of the Bourbon Room in Pueblo, Colorado. (*Id.* at ¶¶ 15–16, 18–19.) Plaintiff was arrested and charged with disorderly conduct and for possessing or consuming alcohol in violation of a protection order. (*Id.* at ¶ 20.) The officers questioned Plaintiff

---

[1] Following the issuance of the Recommendation, on March 11, 2021, the Court dismissed the City Defendants (i.e., Mario Diaz, Justin Preedy, and Jacob Alfonso) from this action with prejudice pursuant to the Stipulated Motion to Dismiss (Doc. # 74). *See* (Doc. # 75). Accordingly, the City Defendants' Motion to Dismiss Second Amended Complaint (Doc. # 30) and the portion of the Recommendation related to that Motion are moot. The Court limits its analysis herein to the County Officers' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 32) and the portions of the Recommendation that concern said Motion.

[2] For the purposes of deciding the instant Motion to Dismiss, the Court accepts the well-pleaded facts in the Complaint as true and views the allegations in the light most favorable to Plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124–25 (10th Cir. 2010).

2

about his identity so they could write him a ticket rather than taking him to jail; however, the officers had difficulty understanding and looking up Plaintiff's name, and they became "frustrated and annoyed with Plaintiff" because they felt they would have to take him to jail to identify him with a fingerprint scanner. (*Id.* at ¶¶ 21–22.)

Officers Diaz and Preedy transported Plaintiff to the Pueblo County Jail. Within a few seconds of exiting the patrol vehicle, while Plaintiff was cooperating with the officers and was not resisting or attempting to flee, Officers Diaz and Preedy "used a harmful/painful technique specifically designed to prevent violent offenders from kicking officers known as a 'chicken-wing,' where they pulled Plaintiff's arms up behind his back, in an extremely uncomfortable/painful position that applies bodyweight pressure on his elbows and shoulders from behind, while walking him into the jail booking room." (*Id.* at ¶¶ 26–30.) Officer Diaz pushed the back of Plaintiff's neck downward, bending Plaintiff forward in a painful and uncomfortable position as Plaintiff was walking. (*Id.* at ¶ 32.) Officers Diaz and Preedy pulled Plaintiff's arms up unnecessarily high for the chicken-wing hold while pushing his head downward. (*Id.* at ¶ 33.) They used the chicken-wing hold on Plaintiff until they entered the booking room. (*Id.* at ¶ 39.) Officer Alfonso, Deputy Kiefer, and Sergeant Smith observed Officers Diaz and Preedy's actions as they used the chicken-wing hold but "did not say or do anything to stop the use of force or suffering." (*Id.* at ¶¶ 41–44.)

Once in the booking room, Officers Diaz and/or Preedy pushed Plaintiff's face onto the counter, causing him pain. (*Id.* at ¶ 46.) When Plaintiff asked for the officers' names, Defendant Kiefer responded by walking up to Plaintiff and pushing Plaintiff's

3

stomach up against the counter hard enough to cause him to vomit on the counter. (*Id.* at ¶¶ 51–52.) Defendant Kiefer and Officer Diaz continued to push Plaintiff down on the counter, and when Plaintiff protested, Officer Diaz joined with Defendant Kiefer "in his effort to toy with Plaintiff, by pulling Plaintiff's leg outward with his foot." (*Id.* at ¶¶ 53–54.)

Plaintiff then exclaimed that he was "hurting," and asked the officers to "look at these handcuffs." (*Id.* at ¶ 56.) Defendant Kiefer allegedly responded by pulling Plaintiff's left leg wider and off the ground in a manner that caused Plaintiff to lose his balance. (*Id.* at ¶ 57.) Officers Preedy and Alfonso and Defendant Smith allegedly witnessed Plaintiff being pushed onto the counter, lose his balance, and vomit, but did nothing to intervene or to stop the other officers from causing Plaintiff harm. (*Id.* at ¶ 58.) Defendants Kiefer and Smith and Officers Preedy, Diaz, and Alfonso were present and heard Plaintiff protest about the Defendants' conduct and his resulting pain, illness, and suffering, but none of the Defendants checked the tightness of Plaintiff's handcuffs or otherwise intervened to mitigate or resolve Plaintiff's suffering. (*Id.*, ¶ 59.)

Plaintiff repeatedly told Defendants that the handcuffs hurt. (*Id.* at ¶¶ 65, 71, 73.) Officers Preedy, Diaz, and Alfonso and Defendants Garcia-Serna, Smith, and Atteberry were all present in the room and heard Plaintiff repeatedly complain that the handcuffs hurt him. Nevertheless, no officer acted to intervene or to check the tightness of Plaintiff's handcuffs. (*Id.* at ¶¶ 67, 75, 76.) Instead, Defendant Garcia-Serna yanked up on the handcuffs and pulled Plaintiff's wrists up by the handcuffs, causing Plaintiff to visibly wince and gasp in pain. (*Id.* at ¶ 77.) Plaintiff alleges approximately 8 minutes

4

passed between when Plaintiff first asked the officers to look at his handcuffs and when Plaintiff was escorted out of booking. (*Id.* at ¶ 87.) Plaintiff alleges while he was in the booking room, all Defendants could see the other officers' actions and clearly heard Plaintiff's protests, complaints, and other statements indicating he was in pain, yet failed to intervene. (*Id.* at ¶ 82, 93.)

Plaintiff claims his hands eventually turned purple and lost circulation due to the tightness, lack of loosening, and tugging. (*Id.* at ¶ 94.) Plaintiff alleges that, as a result of Defendants' actions, he has suffered from pain and numbness in both wrist/hands and has been unable to use his hands normally. (*Id.* at ¶ 100.) Plaintiff has been diagnosed with carpal tunnel syndrome in both wrists/hands requiring extensive medical treatment and surgery. (*Id.* at ¶¶ 101–02.)

Plaintiff's SAC became the operative complaint in this case on April 30, 2020. (Doc. # 27.) Therein, Plaintiff asserts one Fourth Amendment claim for excessive force and failure to intervene to prevent excessive force against all Defendants. *See generally* (*id.*). Plaintiff sues Defendants in their individual capacities, pursuant to 42 U.S.C. § 1983, seeking compensatory damages and punitive damages. (*Id.* at 3–4, 19.)

The County Defendants filed the instant Motion to Dismiss on May 15, 2020 (Doc. # 32), and conventionally filed body-worn camera footage as Exhibits A through D to the Motion to Dismiss. (Doc. ## 32-1–32-4.) The Court referred the Motion to Judge Tafoya, who issued her Recommendation on February 11, 2021. (Doc. # 70.) The County Defendants timely objected to the Recommendation. (Doc. # 72.) Plaintiff filed a Response. (Doc. # 76.)

## II.　LEGAL STANDARDS

### A.　REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, however, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.")).

### B.　FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid

of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (citation omitted).

### III.  DISCUSSION

The Court's analysis will proceed in two steps. First, the Court will review the portions of the Recommendation to which no party objects in order to determine whether there are any clear errors in Judge Tafoya's findings and conclusions. Second, the Court will conduct a *de novo* review of the portions of the Recommendation to which the County Defendants object.

### A.  CLEAR ERROR REVIEW

Neither party objected to the following determinations by Judge Tafoya:

1. Defendant Kiefer had notice of Plaintiff's claims against him within 90 days of the filing of Plaintiff's original complaint (Doc. # 70 at 12–14);

2. Plaintiff's claims against Defendant Kiefer relate back to the date of his original complaint pursuant to Fed. R. Civ. P. 15(c)(1)(C) (*id.* at 12–15);

3. therefore, the County Defendants' Motion to Dismiss should be denied to the extent it argues that the claims against Defendant Kiefer are barred by the statute of limitations (*id.* at 15);

4. if the Court declines to consider the body-worn camera footage submitted in support of the County Defendants' Motion to Dismiss, then the County Defendants' 12(b)(6) arguments concerning Plaintiff's excessive force claims fail because they rely entirely on the body camera footage (*id.* at

> 17);
>
> 5. if the Court declines to consider the body-worn camera footage submitted in support of the County Defendants' Motion to Dismiss, then the County Defendants' arguments that Plaintiff has failed to state a claim for failure to intervene should be rejected to the extent they are premised on the body-worn camera footage; and
>
> 6. Plaintiff has sufficiently alleged that Defendants Smith and Atteberry had a realistic opportunity to intervene, so the County Defendants' Motion to Dismiss should be denied to the extent it argues otherwise (*id.* at 19–20).

The Court has reviewed the relevant pleadings concerning the above claims as well as the Recommendation. Based on this review, the Court concludes that Judge Tafoya's thorough and comprehensive analyses and recommendations are correct, and "there is no clear error on the face of the record." Fed. R. Civ. P. 72 advisory committee's note. Therefore, the Court adopts the applicable portions of the Recommendation and denies in part the County Defendants' Motion to Dismiss in accordance with said portions of the Recommendation. *See Summers*, 927 F.2d at 1167 (explaining that in the absence of a timely objection, "the district court may review a magistrate [judge's] report under any standard it deems appropriate.").

**B.** ***DE NOVO* REVIEW**

The County Defendants object to the Recommendation to the extent it (1) declined to consider the body-worn camera footage Defendants attached to their respective Motions to Dismiss; (2) credited allegations in the SAC that were directly

9

contradicted by the body-worn camera footage; and (3) denied the County Defendants qualified immunity. *See generally* (Doc. # 72). Each of the County Defendants' objections turns on whether Judge Tafoya properly declined to consider the body-worn camera footage, so the Court begins its analysis with this threshold issue.

    1.    <u>Whether the Magistrate Judge Erred in Declining to Consider the Body-Worn Camera Footage</u>

Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to the general rule limiting the court's review to the complaint include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and "matters of which a court may take judicial notice." *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Should the court receive and consider materials outside the complaint, it may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). However, a district court may consider documents referred to in the complaint that are central to a plaintiff's claim if the parties do not dispute their authenticity without converting the Rule 12(b)(6) motion into a summary judgment motion. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

In the instant case, the County Defendants argue that the magistrate judge erred by declining to consider the body-worn camera footage submitted in support of their

Motion to Dismiss. To determine whether consideration of the footage is appropriate at this stage, the Court determines whether the body-worn camera footage is incorporated by reference in the complaint or is referred to in and central to the complaint.

Plaintiff included three allegations related to body-worn cameras in his SAC: (1) "Plaintiff asked if the officers' body cams are on." (Doc. # 27 at ¶ 72); (2) "After Defendant Deputy Garcia-Serna pulled on the handcuffs, Defendant Officers Diaz and Preedy then turned their body cams off and Defendant Officer Alfonso walked away from the room as Plaintiff continued to yell for approximately 2 minutes that the handcuffs were 'so tight,' and otherwise express exclamations and physical reactions indicative of serious pain." (*Id.* at ¶ 84); and (3) "The only officers with body cams were Defendant Officers Diaz, Preedy, and Alfonso." (*Id.* at ¶ 85). The SAC does not refer to the content of any body-worn camera recording. Nor do Plaintiff's claims rely on the contents of the footage. Upon review of the SAC, the Court agrees with Judge Tafoya's conclusion that "Plaintiff does not rely on the body cam footage to support his claims, and whether the body cameras were on or off and which defendants may have worn the body cameras is not 'central to' Plaintiff's claims. (Doc. # 70 at 8) (citing *N.E.L. v. Gildner*, 780 F. App'x 567, 571 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 936 (2020)). Therefore, Judge Tafoya properly concluded that consideration of the footage is inappropriate at the 12(b)(6) stage.

The County Defendants have failed to cite to any authority binding on this Court that compels a different result. Defendants cite to *Scott v. Harris*, 550 U.S. 372 (2009), but the Supreme Court in *Scott* considered video footage at the summary judgment

stage. *Id.* at 379–80. Defendants cite to a footnote by the Tenth Circuit in *Myers v. Brewer*, 773 F. App'x 1032, 1035 n.2 (10th Cir. 2019), *cert. denied,* 140 S. Ct. 848 (2020), for the proposition that the Tenth Circuit "confirmed it (and its district courts) must account, at the Rule 12 stage, for [body-worn camera] footage which is referenced in a complaint, even in passing." However, the footnote made a case-specific determination with little legal analysis:

> Because this case was decided on a Rule 12(b)(6) motion, "we accept all well-pleaded factual allegations in the complaint as true," *Thomas v. Kaven*, 765 F.3d 1183, 1188 n.1 (10th Cir. 2014), and **may** consider audio and video recordings taken from the responding officers' body cameras, **which are referenced in the complaint**, *see Montoya v. Vigil*, 898 F.3d 1056, 1060 n.2 (10th Cir. 2018); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 & n.22 (10th Cir. 2017).

*Id*. (emphasis added). The Tenth Circuit's opinion contains no further analysis regarding how the complaint in that case referenced the audio and video recordings. Nor does it compel district courts to consider body-worn camera footage in every case that mentions a body-worn camera. Further, the footnote in *Myers* cites to *Montoya v. Vigil*, 898 F.3d 1056, 1060 n.2 (10th Cir. 2018), which considered an interrogation video at the motion to dismiss stage that the plaintiff attached to his own complaint. Accordingly, none of the aforementioned cases compel this Court to reach the outcome the County Defendants seek in this case.

The County Defendants also cite to various cases out of this District to argue that the body-worn camera footage is central to Plaintiff's claims and should be considered at the 12(b)(6) stage. These cases are inapposite in that they concern either the consent of the plaintiff to consideration of the recording external to the complaint,

allegations establishing that the external recording was central to the plaintiff's claims, or both. *See, e.g.*, *Est. of Ronquillo by & through Est. of Sanchez v. City & Cty. of Denver*, No. 16-CV-01664-CMA-KMT, 2016 WL 10843787, at *2 (D. Colo. Nov. 17, 2016) (considering video recording at 12(b)(6) stage where the parties asked the Court to review and consider the recording, the plaintiff incorporated the recording in the complaint by reference and conventionally filed it as an exhibit, and the plaintiff referred to the recording and relied on its contents throughout the complaint), *aff'd,* 720 F. App'x 434 (10th Cir. 2017); *Pittman v. City of Aurora*, No. 19-CV-01947-PAB-NRN, 2020 WL 6586659, at *4 (D. Colo. Oct. 23, 2020) (considering body-worn camera footage at 12(b)(6) stage where the complaint referred to the footage "as support" for the plaintiff's claims, including by alleging that "[t]he officers' lapel cameras clearly show that [the plaintiff] felt threatened, and was exhausted, scared, and humiliated" and that the lieutenant "could clearly see and hear on the body camera footage that [the plaintiff] was unlawfully seized and searched based on his race and arrest record . . . ."), *report and recommendation adopted,* No. 19-CV-01947-PAB-NRN, 2020 WL 6585841 (D. Colo. Nov. 10, 2020); *Jackson v. Gatto*, No. 13-CV-02516-CBS, 2014 WL 2743130, at *3 (D. Colo. June 17, 2014) (considering audio/video recording at 12(b)(6) stage where the plaintiff alleged the defendant "activated the audio/video device in his vehicle and recorded the majority of the events that are the subject of [the] complaint" and plaintiff's counsel consented to the court's consideration of the recording); *Strepka v. Thompson*, No. 18-CV-02557-RBJ-STV, 2019 WL 5790710, at *1 n.1 (D. Colo. July 24, 2019) (considering 911 call recording and body camera footage where the plaintiff did not

object to the court's consideration of the recordings), *report and recommendation adopted,* No. 18-CV-02557-RBJ-STV, 2019 WL 4316523 (D. Colo. Sept. 12, 2019), *aff'd,* 831 F. App'x 906 (10th Cir. 2020).

Accordingly, the County Defendants' objections are overruled, and the Court adopts Judge Tafoya's conclusion that consideration of the body-worn camera footage would be inappropriate at this stage.

### 2. Whether the Magistrate Judge Erred in Crediting Allegations Contradicted by the Body-Worn Camera Footage

The County Defendants' argument that Judge Tafoya erred in crediting certain allegations in the SAC is dependent upon this Court concluding that consideration of the body-worn camera footage is appropriate. *See* (Doc. # 72 at 8) (arguing that certain allegations in the SAC are contradicted by the body-worn camera footage and, thus, are not entitled to the presumption of truth). As the Court has concluded that consideration of that footage is inappropriate at this stage, the County Defendants' objections on this basis are overruled.

### 3. Whether the Magistrate Judge Erred in Denying the County Defendants Qualified Immunity

Finally, the County Defendants assert that Judge Tafoya erred in denying them qualified immunity, given the body of caselaw deeming consideration of body-worn camera footage appropriate at this stage. (Doc. # 72 at 10.) As previously concluded, consideration of body-worn camera footage is inappropriate at this stage. Therefore, the County Defendants' argument that Judge Tafoya erred in denying qualified immunity because she declined to review the body-worn camera footage is unavailing.

Moreover, to the extent the County Defendants imply that they did not receive a "substantive ruling" on qualified immunity, they are incorrect. The County Defendants argued in two sentences in their Motion to Dismiss that they are entitled to qualified immunity based on "the circumstances depicted in the body cam video[,]" rather than on Plaintiff's well-pleaded allegations.[3] Judge Tafoya properly rejected the County Defendants' limited argument based on her determination that consideration of the body-worn camera footage is inappropriate at this stage. (Doc. # 70 at 23.) Judge Tafoya then went on to explain that Plaintiff had satisfied the clearly established law prong of the qualified immunity analysis with respect to each of his claims:

> As to Plaintiff's tight handcuffs claim, the right to be free from unduly tight handcuffing was "clearly established" at the time of Plaintiff's arrest. *See Vondrak*[ *v. City of Las Cruces*, 535 F.3d 1198, 1209 (10th Cir. 2008)] (citing cases).
>
> To the extent Plaintiff asserts other claims related to the defendants' allegedly using excessive force after he was already handcuffed and did not pose a threat, it is clearly established "that the use of force on effectively subdued individuals violates the Fourth Amendment." *McCoy v. Meyers*, 887 F.3d 1034, 1049 (10th Cir. 2018) (citing *Dixon v. Richer*, 922 F.2d 1456 (10th Cir. 1991); *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007); and *Weigel v. Broad*, 544 F.3d 1143 (10th Cir.

---

[3] The County Defendants argued that they are entitled to qualified immunity as follows:

> Here, the County Officers are unaware of any Supreme Court or Tenth Circuit case, or any clearly established weight of authority from other circuits, establishing that it is a constitutional violation to hold an uncooperative arrestee in place while booking is completed, to fail to remove handcuffs that were placed by officers from another law enforcement entity and have been checked for tightness, or to fail to intervene under the circumstances depicted in the bodycam video submitted with this Motion. As such, the County Officers are entitled to qualified immunity even if Plaintiff could state a claim for a constitutional violation against any of them.

(Doc. # 32 at 15.)

15

> 2008)). Here, Plaintiff alleges he was not resisting and was subdued and handcuffed when the alleged excessive force occurred.
>
> As to Plaintiff's failure to intervene claim, "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Id.* at 1210 (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted)). To the extent the defendants argue that they did not have sufficient time to intercede or that they were not capable of preventing the harm being caused by other officers these are "issue[s] of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Vondrak*, 535 F.3d at 1210 (upholding denial of qualified immunity on excessive force and failure to intervene claims).
>
> Plaintiff has satisfied the clearly established prong of the qualified immunity analysis as to his claims.

(*Id.* at 25–26.) This Court finds that Judge Tafoya properly considered and rejected the County Defendants' limited qualified immunity argument. The County Defendants' objections to the contrary are overruled.[4]

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- the Court finds that the City Defendants' Motion to Dismiss Second Amended Complaint (Doc. # 30) and the portions of the February 11, 2021 Recommendation of United States Magistrate Judge (Doc. # 70) that relate to said Motion are MOOT;

---

[4] To the extent the County Defendants attempt to argue in their Objection that they are entitled to qualified immunity on the basis that Plaintiff failed to allege a constitutional violation on the face of the SAC, rather than based on the body-worn camera footage, Defendants have waived this argument by raising it for the first time in their Objection to the Recommendation. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.") (citation omitted).

- the remainder of the February 11, 2021 Recommendation of United States Magistrate Judge (Doc. # 70) is AFFIRMED AND ADOPTED as an Order of this Court; and

- the County Officers' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 32) is DENIED.

DATED: March 30, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge